ORIGINAL

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FILED
AUG 7 2008
U.S. COURT OF FEDERAL CLAIMS

SUNNY DAYS CATAMARANS, INC.,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

No. 08-565 C

**COMPLAINT**

*(Pre-Award Bid Protest)*

1. This Court has jurisdiction over this bid protest action under 28 U.S.C. § 1491(b)(1).

2. Plaintiff Sunny Days Catamarans, Inc. ("Sunny Days") is a corporation established under the laws of Florida in 2001.

3. Defendant is the United States of America acting through the Department of the Interior, National Park Service ("NPS").

4. This suit arises out of NPS' solicitation for proposals for a round-trip ferry service to Dry Tortugas National Park and other specified services.

5. Dry Tortugas National Park is located approximately seventy (70) miles west of Key West within unincorporated Monroe County, Florida

6. As demonstrated below, NPS' failure to (1) specify in the solicitation that the successful offeror must comply with the Service Contract Act ("SCA"), (2) file a notice with the U.S. Department of Labor ("DOL") of their intention to enter into the proposed service contract, and (3) obtain a requisite DOL wage determination, 41 U.S.C. § 351 et seq., was arbitrary and capricious and contrary to the requirements of that Act and renders the solicitation and any contract awarded based on that solicitation illegal and invalid.

## Background

7. Since 1996, the successor-in-interest to Sunny Days and, since 2001 Sunny Days itself, has operated a ferry service to Dry Tortugas National Park under a series of simple, two-page Incidental Business Permit. That current permit is set to expire on December 31, 2008.

8. On April 25, 2008, NPS issued a prospectus for a concessions contract for the "round trip passenger ferry service between Key West, Florida, and Dry Tortugas National Park and other specified services." The solicitation was identified as CC-DRTO001-08 ("DTNP solicitation").

9. Proposals submitted in response to the prospectus are due by August 13, 2008.

**<u>Count I</u> – <u>Failure to Require Compliance with the SCA</u>**

10. The SCA applies to "[e]very contract (and any bid specification therefor) entered into by the United States or the District of Columbia in excess of $2,500.00, except as provided in Section 7 of this Act [41 U.S.C. § 356], the principal purpose of which is to furnish services in the United States through the use of service employees. . . ."

11. Because the principal purpose of the DTNP solicitation is "to furnish services in the United States through the use of service employees," it is covered by the SCA.

12. Pursuant to the authority of 41 U.S.C. § 353(b), the Secretary of Labor issued the current version of 29 C.F.R. § 4.133, which exempts concession contracts "(such as those entered into by the National Park Service) principally for the furnishing of food, lodging, automobile fuel, souvenirs, newspaper stands, and recreational equipment to the general public . . ." from the SCA, but states that where concession contracts "include substantial requirements for services other than those stated, those services <u>are not exempt</u>." <u>Id.</u> (emphasis added).

13. One of the DOL's stated purposes for proposing to amend the then-existing version of 29 C.F.R. § 4.133 was to "indicate the types of concession contracts and bid specifications, <u>including those of the National Park Service</u>, which are <u>not</u> exempted from the Service Contract Act." 45 Fed. Reg. 81785, 81785 (Dec. 12, 1980) (summary) (emphasis added).

14. The regulation does not exempt the DTNP solicitation from the SCA because the services provided thereunder are not principally for the furnishing of food, lodging, automobile fuel, souvenirs, newspaper stands, or recreational equipment to the general public.

15. Additionally, the mission of NPS as established by Congress is to:

> [C]onserve the scenery and the natural and historic objects and the wildlife therein, and to provide for the enjoyment of the same in such a manner and by such means as will leave them unimpaired for the enjoyment of future generations.

The National Park Service Organic Act, 16 U.S.C. § 1.

16. The Dry Tortugus National Park was created by Congress:

> In order to preserve and protect for the education, inspiration, and enjoyment of present and future generations nationally significant natural, historic, scenic, marine, and scientific values in South Florida, there is hereby established the Dry Tortugas National Park.

P.L. 102-525, Title II, Section 201, et seq.

17. Congress specifically mandated the purposes for which NPS was to administer Dry Tortugas National Park as follows:

> (b) MANAGEMENT PURPOSES – The park shall be managed for the following purposes, among others:
>
> (1) To protect and interpret a pristine subtropical marine ecosystem, including an intact coral reef community.
>
> (2) To protect populations of fish and wildlife, including (but not limited to) loggerhead and green sea turtles, sooty terns, frigate birds, and numerous migratory bird species.

(3) To protect the pristine natural environment of the Dry Tortugas group of islands.

(4) To protect, stabilize, restore, and interpret Fort Jefferson, an outstanding example of nineteenth century masonry fortification.

(5) To preserve and protect submerged cultural resources.

(6) In a manner consistent with paragraphs (1) through (5), to provide opportunities for scientific research.

P.L. 102-525, Title II, Section 202, et seq.

18. The solicitation requires the successful offeror to provide services that assist the Park Service in meeting its statutory mission, including by providing:

(a) Environmentally sensitive access to one of the most remote National Parks in the United States which would not otherwise be readily accessible to many citizens;

(b) Interpretive programs during the trip to DTNP;

(c) Literature prepared by the National Park Service during the trip to DTNP;

(d) Tours of the Fort Jefferson by trained interpreters. Tour groups may not exceed 25 individuals at a time and are limited to maximum of six tours per day;

(e) A National Park Service developed self-guided audio tour program for both ferry passenger and non-ferry passengers;

(f) Snorkel equipment so that patrons may access a pristine subtropical marine ecosystem in an environmentally sensitive manner.

19. As such, the transportation and other services performed under the contract are principally of benefit to the Park Service in meeting its statutory obligations.

20. The solicitation, which projects gross revenues for the specified services well in excess of $2,500, should have contained a provision identifying, among other things, the minimum wages and fringe benefits required to be paid to the various classes of service employees in the performance of the contract in accordance with the SCA.

21. Despite the foregoing, the NPS has publicly stated its view that the SCA does not apply to this solicitation. However, NPS has also publicly stated that if the SCA does apply the provisions of the SCA will be incorporated into the contract.

22. NPS' view that the SCA does not apply to the solicitation is contrary to the SCA, its implementing regulations, federal caselaw, DOL rulings and NPS' own past practice.

23. It is Sunny Days' belief that post-award application of the SCA to the contract will result in the successful offeror being required to absorb the additional costs of the SCA.

24. Due to NPS' improper actions, prospective offerors, including Sunny Days, are placed in the untenable position of either bidding the contract with SCA wages as required by law, which would likely result in a non-responsive and certainly a less competitive bid OR ignoring the application of the SCA, violating the law and subsequently being required to fully absorb the cost of complying with the SCA.

25. The solicitation failed to make the SCA applicable to the contract in violation of the SCA and its implementing regulations.

WHEREFORE, plaintiff respectfully requests that this Court:

(a) find that NPS' solicitation for the contract was contrary to law and regulatory mandates and was therefore invalid and illegal; AND

(i) prohibit NPS from continuing with the solicitation and making contract award pursuant to that solicitation AND

(ii) direct NPS to reissue the solicitation, properly including the requirements of the Service Contract Act; AND

(b) grant plaintiff its costs and attorney's fees incurred in pursuing this action, and to the extent applicable, its bid and proposal costs; AND

(c) grant plaintiff such further relief as this Court deems just and proper.

Respectfully submitted,

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140
(202) 775-8217 - facsimile

Counsel for Plaintiff

Dated: August 7, 2008