ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
*Pre-Award Bid Protest*

FILED
AUG 7 2008
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SUNNY DAYS CATAMARANS, INC., Plaintiff, v. THE UNITED STATES OF AMERICA, Defendant. | No. 08-565 C |

08-565 C

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140
(202) 775-8217 – facsimile

Counsel for Plaintiff

Dated: August 7, 2008

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ........ ii

Index to Exhibits to Plaintiff's Motion for Preliminary Injunction ........ iv

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 1

III. STANDING ........ 2

IV. ISSUANCE OF A PRELIMINARY INJUNCTION IS PROPER UNDER THE CIRCUMSTANCES OF THIS CASE ........ 3

A. Plaintiff Is Likely To Prevail On The Merits Or, At A Minimum, Plaintiff Demonstrates A Substantial Case On The Merits ........ 3

B. Absent Issuance Of A Preliminary Injunction, Plaintiff Will Suffer Immediate Irreparable Harm ........ 10

C. The Balance Of Hardships In This Case Favors Plaintiff ........ 12

D. The Public Interest Would Be Served By Issuance Of A Preliminary Injunction ........ 14

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**CASES** **PAGE**

Am. Fed. of Gov't Employees Local 1668 v. Dunn,
561 F.2d 1310 (9th Cir. 1997) ........ 11, 12, 14

Blue & Gold Fleet, LP v. United States et al.,
70 Fed. Cl. 487 (Fed. Cl. 2006) (affirmed on appeal, Blue & Gold Fleet, LP v. United States, 492 F.3d 1308 (Fed. Cir. 2007) ........ 8, 12

Brumm Const. Co.,
B-201613, 81-2 CPD ¶ 280 ........ 11

Champion Structure Co.,
B-198863, 80-2 CPD ¶ 291 ........ 11

Chevron U.S.A., Inc. v. Nat. Resource Def. Council, Inc.,
467 U.S. 837 (1984) ........ 9

FMC Corp. v. United States,
3 F.3d 424 (Fed. Cir. 1993) ........ 3

Frazier v. United States,
79 Fed. Cl. 148 (Fed. Cl. 2007) ........ 2

Gracy v. IBEW,
868 F.2d 671 (4th Cir. 1989) ........ 14

Marine Transport Lines, Inc. v. Lehman,
623 F. Supp. 330 (D.D.C. 1985) ........ 11

Moore Servs., Inc.,
B-200718, 81-2 CPD ¶ 145 ........ 11

PCI/RCI v. United States,
36 Fed. Cl. 761 (1996) ........ 14

Scanwell Labs, Inc. v. United States,
424 F.2d 859 (D.C. Cir. 1970) ........ 14

Smith v. Jackson, Miss.,
588 U.S. 228 (2005) ........ 9

Standard Havens Products, Inc. v. Gencor Industries, Inc.,
897 F.2d 511 (Fed. Cir. 1990) .......... 15

Zenith Radio Corp. v. United States,
710 F.2d 806 (Fed. Cir. 1983) .......... 3, 10

**STATUTES AND REGULATIONS**

41 U.S.C. § 351 et seq. ("SCA") .......... *passim*

41 U.S.C. § 351(a) .......... 4

41 U.S.C. § 351(a)(1) .......... 4

41 U.S.C. § 353 .......... 5, 9

29 C.F.R. § 4.133 .......... 5

29 C.F.R. § 4.133(a) .......... 4

29 C.F.R. § 4.133(b) .......... 5, 6, 7

29 C.F.R. § 4.141(a) .......... 4

29 C.F.R. § 4.163(b) .......... 4

33 Fed. Reg. 9880 (July 10, 1968) .......... 5

45 Fed. Reg. 81785 (Dec. 12, 1980) .......... 5

48 Fed. Reg. 49736 (Oct. 27, 1983) .......... 5, 6

RCFC 65(a) .......... 1, 3

**MISCELLANEOUS**

111 Cong. Rec. 24387 (1965) .......... 11, 14

1965 U.S. Code Cong. & Admin. News .......... 12

## INDEX TO EXHIBITS

First Declaration of Bernard E. Eymann dated August 7, 2008 .......... Exhibit 1

Business Opportunity For Concessions Operation at Dry Tortugas National Park .......... Exhibit 2

United States Department of Labor, Wage and Hour Division, Opinion Letter, (July 13, 2004) (case closed) ("Denali DOL Ruling") .......... Exhibit 3

United States Department of Labor, Wage and Hour Division, Opinion Letter, (January 6, 2006)(appeal pending at DOL Administrative Review Board) ("Alcatraz DOL Ruling") .......... Exhibit 4

Letter from Jonathan B. Jarvis, NPS to Terry MacRae, Alcatraz Cruise Lines, LLC dated October 12, 1996 incorporating the SCA into the Alcatraz contract .......... Exhibit 5

Excerpts from "Business Opportunity for Ferry Service at Statue of Liberty National Monument and Ellis Island" .......... Exhibit 6

## I. INTRODUCTION

Plaintiff Sunny Days Catamarans, Inc. ("Sunny Days") submits this memorandum in support of its motion for a preliminary injunction. Plaintiff's motion seeks to enjoin defendant, United States, as well as the National Park Service ("NPS"), together with the delegates, officers, agents, servants, and employees of the NPS from (1) proceeding with the solicitation and making award of NPS concession contract number CC-DRTO001-08, the principal purpose of which is to furnish interpretative and transportation services, in response to a solicitation that does not provide for the applicability of the Service Contract Act ("SCA"), 41 U.S.C. § 351 et seq., and (2) from allowing any contractor on concession contract number CC-DRTO001-08, the principal purpose of which is to provide interpretative and transportation services, to pay their employees wages and fringe benefits lower than those required by the SCA.

## II. STATEMENT OF FACTS

Plaintiff Sunny Days has operated ferry service to Dry Tortugas National Park since 2001 under a series of NPS Incidental Business Permits. The current permit is set to expire on December 31, 2008. First Declaration of Bernard E. Eymann ("Eymann Decl.") attached hereto as Ex. 1 at ¶ 1. On April 25, 2008, defendant posted notice of solicitation CC-DRTO001-08 ("DTNP contract") seeking bids for a concessions contract, the principal purpose of which is to furnish interpretative and transportation services for Dry Tortugas National Park. A copy of the solicitation is attached hereto as Ex. 2.

After reviewing the solicitation, plaintiff became concerned about a potential violation of law in the solicitation and sent a letter/email to NPS inquiring, among other things, about the

applicability of the SCA to the DTNP contract and whether NPS has received a U.S. Department of Labor ("DOL") exemption from the SCA for this competition. NPS' response was the following:

> The NPS believes the Services Contract Act does not apply in the circumstances presented by this concession opportunity. However, if it is determined that this Contract is subject to the Service Contract Act, then pursuant to the provisions of Section 5 of this Contract, which requires compliance with all Applicable Laws, the appropriate provisions of the Service Contract Act will be incorporated into this Contract.

Ex. 1, Eymann Decl. at ¶ 10. To date, defendant has failed to (1) include SCA provisions in its solicitation for the DTNP contract, (2) file a notice with the DOL of their intention to make the proposed contract, and (3) obtain a requisite DOL wage determination. As a result of issuing the solicitation of the DTNP contract, the principal purpose of which is to furnish interpretative and transportation services, without complying with the SCA, defendant not only failed to require offerors to pay the wages and fringe benefits required by the SCA but is in fact affirmatively encouraging offerors to violate the Act's requirements.

## III. STANDING

Plaintiff has standing to pursue injunctive relief against a federal agency in a pre-award bid protest action because plaintiff, an incumbent service provider at DTNP, is a likely bidder on the DTNP concessions contract. See Frazier v. United States, 79 Fed. Cl. 148 (Fed. Cl. Nov. 7, 2007) (Plaintiffs' standing for a pre-award bid protest was based on their status as likely bidders on the new concession contracts).

## IV. ISSUANCE OF A PRELIMINARY INJUNCTION IS PROPER UNDER THE CIRCUMSTANCES OF THIS CASE

The Court of Federal Claims has the authority to grant the requested injunctive relief pursuant to Rule 65(a) of the Rules of the Court of Federal Claims.

Upon a request made for injunctive relief, the movant must show (1) that they will suffer irreparable harm if the relief is not granted; (2) that the movant is likely to prevail on the merits; (3) that the balance of hardships tips in the movant's favor; and (4) that the public interest would be better served by the relief requested. See, e.g., Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983). No one factor, taken individually, is necessarily dispositive. See FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). The weakness of the showing regarding one factor may be overborne by the strength of the others. Id.

As set forth below, the purely legal question raised with respect to whether the SCA applies to the solicitation is not a close one and the equities weigh heavily in favor of maintaining the status quo. Accordingly, Sunny Days respectfully requests that the Court exercise its discretion to enter a preliminary injunction as authorized by RCFC 65(a).

### A. Plaintiff Is Likely To Prevail On The Merits Or, At A Minimum, Plaintiff Demonstrates A Substantial Case On The Merits

Plaintiff's arguments regarding applicability of the SCA to the DTNP contract present a straightforward question of law: whether NPS should have applied the SCA to the DTNP solicitation? The terms of the SCA, regulations implementing the SCA, federal caselaw, DOL

rulings, and NPS' own past practices all confirm that this question should be resolved in favor of Sunny Days.

By its express terms, the SCA applies to [e]very contract (and any bid specification therefor) entered into by the United States . . . in excess of $2,500 . . . the principal purpose of which is to furnish services," 41 U.S.C. § 351(a), and requires the contractor to pay its employees "in accordance with prevailing rates for such employees in the locality" as determined by the DOL. 41 U.S.C. § 351(a)(1). It does not matter who the beneficiary of the contract is, "it is enough if the contract is 'entered into' by and with the Government and if its principal purpose is 'to furnish services in the United States through the use of service employees.'" 29 C.F.R. § 4.133(a). Moreover, any failure of the solicitation to clearly state that the SCA applied cannot and does not exempt the contract from the applicability of the SCA. See id. § 4.163(b).

The value of the gross receipts anticipated under the DTNP contract are well in excess of $2,500. See Ex. 2 at 26-27; 41 U.S.C. § 351; 29 C.F.R. § 4.141(a) ("concession contracts are considered to be contracts in excess of $2,500 if the contractor's gross receipts under the contract may exceed $2,500"). Moreover, pursuant to the NPS' solicitation, the contractor is required to provide transportation services to and from Dry Tortugas National Park, provide interpretative services on board the vessel as well as during on-site tours of Fort Jefferson by trained interpreters, all of which are services covered by the SCA. Ex. 1, Eymann Decl. at ¶ 4. Among the Sunny Days employees providing services subject to the SCA are the captain and crew of the ferry, interpretive guides during the trip to Dry Tortugas National Park, interpretive guides

providing tours of Fort Jefferson on Dry Tortugas National Park, reservation agents, ticket sellers, and ticket takers. Ex. 1, Eymann Decl. at ¶ 8. Accordingly, by its terms the SCA clearly applies to the DTNP contract.

Moreover, DOL, the agency charged with interpreting and administering the SCA, see 41 U.S.C. § 353, recognizes that the SCA applies to NPS concession contracts, such as the DTNP contract, as demonstrated by DOL regulations found at 29 C.F.R. § 4.133(b) and its history. When first adopted in 1968, 29 C.F.R. § 4.133 stated that "a contract with the Government [that] grants the contractor the privilege of operating as a concessionaire in a Government park for the purpose of furnishing services to the public generally rather than to the Government or to personnel engaged in its business, the contract is not considered subject to the act." 33 Fed. Reg. 9880 (July 10, 1968). In 1983, DOL revised the regulations because of the "need for further clarification of which concession contracts are exempt from and which are covered by the [SCA]." 45 Fed. Reg. 81785, 81786 (Dec. 12, 1980). DOL's stated purpose was to indicate the types of concession contracts and bid specifications, including those of the [NPS], which are not exempted from the [SCA]." Id. Comments on the proposed regulation had suggested that all concession contracts should be exempt. 48 Fed. Reg. 49736, 49753 (Oct. 27, 1983). DOL rejected this suggestion because there is "no evidence of Congressional intent to so limit coverage" and specified that the provision was an exemption . . . delimiting its scope to the listed concession contract services." Id.

The DTNP contract is not among those few concessions contracts that are expressly exempt from the SCA by DOL regulations because it is not a concessions contract "principally

for the furnishing of food, lodging, automobile fuel, souvenirs, newspaper stands, and recreational equipment to the general public, as distinguished from the United States Government or its personnel" but include[s] substantial requirements for services other than those stated, [which] are not exempt." 29 C.F.R. § 4.133(b). Indeed, in adopting these limited exceptions, DOL specifically found that "[s]pecifications within such contracts for other services such as maintenance and dissemination of information about the Government and its programs were not exempt [from the SCA]." 48 Fed. Reg. 49736, 49752 (Oct. 27, 1983). As noted above, the solicitation for the DTNP contract requires the successful offeror to provide services that assist the Park Service in meeting its statutory mission, including by providing:

(a) Environmentally sensitive access to one of the most remote National Parks in the United States which would not otherwise be readily accessible to many citizens;

(b) Interpretive programs during the trip to DTNP;

(c) Literature prepared by the National Park Service during the trip to DTNP;

(d) Tours of the Fort Jefferson by trained interpreters. Tour groups may not exceed 25 individuals at a time and are limited to maximum of six tours per day;

(e) A NPS developed self-guided audio tour program for both ferry passenger and non-ferry passengers;

(f) Snorkel equipment so that patrons may access a pristine subtropical marine ecosystem in an environmentally sensitive manner.

These requirements are not incidental to NPS' operation of DTNP unlike the few concession contracts specifically exempted under the regulations such as food services, newspaper stands, and souvenir shops. Rather, they are of direct benefit to the NPS in meeting its statutory obligations.

DOL has also ruled that NPS contracts which are primarily for transportation services are subject to the SCA. For example, in a ruling relating to a concession contract involving bus transportation services at the Denali National Park, DOL issued a final ruling stating that the transportation services were "SCA covered as they are outside the scope of the limited exemption provided in [29 C.F.R. §] 4.133(b). . . . Because the concession contract is not 'principally for' the exempt items identified in the cited regulations (section 4.133(b)), SCA coverage exists for the entire contract." See United States Department of Labor, Wage and Hour Division, Opinion Letter, (July 13, 2004) (case closed September 29, 2006 as the Interior Department has decided not to petition for review of the Acting Administrator's ruling) ("Denali DOL Ruling"). A copy of the Denali DOL Ruling is attached hereto as Ex. 3.

In yet another DOL ruling relating to water transportation services to Alcatraz in San Francisco Bay, DOL again found that none of the few limited exceptions for concession contracts found in 29 C.F.R. § 4.133(b) were applicable and therefore the SCA applied to the concession contract despite NPS' contention to the contrary. See United States Department of Labor, Wage and Hour Division, Opinion Letter, (January 6, 2006) (appeal thereafter pending with DOL Administrative Review Board) ("Alcatraz DOL Ruling"). A copy of the Alcatraz DOL Ruling is attached hereto as Ex. 4.

Thereafter, in Int'l Org. of Masters, Mates and Pilots, Pacific Maritime Region v. National Park Service *et. al.*, 2006 WL 1466829 (N.D. Cal. May 26, 2006), the union representing employees of Blue & Gold Fleet, LP, the incumbent contractor on the Alcatraz contract, obtained injunctive relief when the court found that plaintiffs were likely to succeed on

the merits of their claim that the SCA applied to the contract. Defendants were preliminarily enjoined from awarding a contract for Alcatraz service "that permits any contractor or subcontractor under it to pay its employees providing services under such contract less than the wages and fringe benefits specified in Plaintiffs' collective bargaining agreements with [Blue & Gold Fleet], including any prospective increases in wages and fringe benefits specified in such collective bargaining agreements."[1] Moreover, NPS subsequently required the successful offeror for the Alcatraz contract to comply with the SCA. See Letter from Jonathan B. Jarvis, NPS to Terry MacRae, Alcatraz Cruise Lines, LLC dated October 12, 1996 incorporating the SCA into the Alcatraz contract. A copy of the letter is attached hereto as Ex. 5. Significantly, NPS simply imposed the terms of the SCA on the successful contractor through Section 5 of the Alcatraz contract which requires the contractor to comply with all applicable laws in fulfilling its obligations under the contract. Id. This is precisely the potential result that concerns Sunny Days, and which NPS has intimated could occur, if the DTNP contract is awarded without the application of the SCA being made an explicit part of the solicitation.[2] See Ex. 1, Eymann Decl. at ¶ 10.

---

[1]In a bid protest of the same contract, the Court of Federal Claims did not reach the merits of plaintiff Blue & Gold Fleet, LP's argument that the SCA applied to the Alcatraz concession contract because it concluded that plaintiff should have raised the issue of the applicability of the SCA prior to the date set for receipt of proposals and that the protest was therefore untimely. Blue & Gold Fleet, LP v. United States *et al.*, 70 Fed. Cl. 487 (Fed. Cl. March 22, 2006) (affirmed on appeal, Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308 (Fed. Cir. June 26, 2007)).

[2]Similarly, in recognition of DOL's determination that the SCA applies to the contract for transportation services to the Statue of Liberty, the NPS noted its expectation that wage rates in proposals for these services would be in line with rates resulting from the application of wage agreements by the incumbent contractor as required by the SCA. See excerpts from "Business Opportunity for Ferry Service at Statue of Liberty National Monument and Ellis Island" at p. 28; and Contract Exhibit B, Section III at page B-4. A copy is attached hereto as Ex. 6.

NPS' public statement that the SCA does not apply to the DTNP contract is not entitled to any deference by this Court because it directly contradicts DOL's interpretation. Chevron U.S.A., Inc. v. Nat. Resource Def. Council, Inc., 467 U.S. 837, 843-44 (1984) (deference must be given to the agency to which Congress delegated the responsibility to interpret the law and draft implementing regulations). See Smith v. Jackson, Miss., 588 U.S. 228 (2005) (O'Connor, J., concurring) ("Congress has explicitly or implicitly delegated to the agency responsible for administering the statute the authority to choose among permissible constructions of ambiguous statutory text;" applying contradictory interpretations from other agencies flies in the face of this delegation). Congress delegated the responsibility for implementing the SCA to DOL. 41 U.S.C. § 353. DOL's interpretation trumps any inconsistent view espoused by NPS.[3]

Accordingly, NPS' putative belief that the SCA does not apply to the subject concessions contract, the principal purpose of which is to provide interpretative and transportation services, directly contradicts the plain language of the SCA, the regulations promulgated by the DOL, DOL Wage and Hour Division opinions, federal caselaw and NPS' own past and present practices. Thus, NPS' solicitation for the contract is contrary to law and regulatory mandates and is therefore invalid and illegal.

[3]As discussed infra, even NPS' own interpretations of the SCA are fractured as it has applied the SCA to comparable contracts for transportation services to Alcatraz and the Statue of Liberty.

**B. Absent Issuance Of A Preliminary Injunction, Plaintiff Will Suffer Immediate Irreparable Harm**

On the question of irreparable injury, the Court must analyze the magnitude of the injury, the immediacy of the injury, and the inadequacy of future corrective relief. Zenith Radio Corp., 710 F.2d at 809.

Based on the foregoing, it is highly probable that this Court will find that the SCA applies to the solicitation. Accordingly, whatever company is awarded the contract ultimately will have to pay its employees the wages required by the Act. As such, in any realistic cost analysis, NPS' assessment of the actual labor costs that each offeror would incur should be based on the wages set out in the SCA. However, because the solicitation does not say that the SCA applies, and NPS has indicated its belief that the SCA does not apply, plaintiff is faced with a Hobson's choice: (a) to be competitive, plaintiff would have to bid in an illegal manner without accounting for SCA wages; or (b) if plaintiff bids as it believes is proper plaintiff will most likely not be awarded the contract given the NPS' public statement that the SCA does not apply (and the likelihood that the legal bid will not be competitive). No bidder should be put in this position.

Moreover, NPS has stated that if it later determines that the SCA applies it will require the successful offeror to abide by the SCA. Ex. 1, Eymann Decl. at ¶ 10. The unmistakable implication is that the contractor will be made to bear this cost. Indeed, this is precisely what the NPS did in the concession contracts for transportation services to Alcatraz. See Ex. 5. In the

face of these increased costs of wages, the DTNP contract could well cease to be profitable rendering continued performance more difficult or even impossible.

Moreover, it is well-established that an agency cannot legally award a contract while intending to later modify the contract to include provisions required by the SCA. Marine Transport Lines, Inc. v. Lehman, 623 F. Supp. 330, 336 (D.D.C. 1985). See also Brumm Const. Co., B-201613, 81-2 CPD ¶ 280 (awarding contract with intent to modify it undermines the competitive bidding system by depriving the government of the full benefit of competition); Champion Structure Co., B-198863, 80-2 CPD ¶ 291 ("It is axiomatic that the contract awarded must be the contract to be performed and that a contract may not be awarded with intent to immediately amend it"); accord Moore Servs., Inc., B-200718, 81-2 CPD ¶ 145 (ordering new procurement where the Army effectively made contract award knowing it would have to modify the terms of performance). In these circumstances, the entry of a preliminary injunction in order to resolve the issue prior to award is plainly the preferable course of conduct.

Plaintiff would also suffer irreparable harm if defendant is allowed to solicit and award the DTNP contract without the required SCA provisions because NPS' actions would depress wages in the entire maritime industry. Such immediate and irreparable harm would frustrate the reasons for enacting the SCA. See Am. Fed. of Gov't Employees Local 1668 v. Dunn, 561 F.2d 1310, 1312 (9th Cir. 1977) (Congress "passed the Service Contract Act to insure 'that the federal Government shall not be a party to the depressing of labor standards in any area of the nation'") (quoting 111 Cong. Rec. 24387 (1965) Cong. O'Hara, co-author of the Act.). In fact, the SCA states: "The purpose of this bill is to provide labor standards for the protection of employees of

contractors and subcontractors furnishing services to or performing maintenance service for Federal agencies." Am. Fed. of Gov't Employees Local 1668, 561 F.2d at 1312 (quoting 1965 U.S. Code Cong. & Admin. News, p. 3737). Allowing injunctive relief would ensure the protections of the SCA to which plaintiff is entitled.

Accordingly, in order to ensure that both the protections of the SCA are properly applied and that the integrity and certainty in the government contract procurement system is respected plaintiff raises the application of the SCA to the subject DTNP contract in its current motion for a pre-award preliminary injunction. Plaintiff does so at this juncture, i.e., before the August 13, 2008 date set for receipt of proposals or face the further irreparable harm that its complaint in this regard would be deemed untimely. Blue & Gold Fleet, LP v. United States *et al.*, 70 Fed. Cl. 487 (Fed. Cl. March 22, 2006) (affirmed on appeal, Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308 (Fed. Cir. June 26, 2007)).

**C. The Balance Of Hardships In This Case Favors Plaintiff**

The third factor to be considered is the balance of hardships to the parties that would result from granting or denying a request for injunctive relief. In this case, any hardship to defendant caused by maintaining the status quo is outweighed by the potential harm to plaintiff. As discussed above, if the requested injunctive relief is denied, plaintiff will suffer irreparable injuries that are not redressable except by the Court's powers to grant injunctive relief.

In contrast, defendant will suffer no significant hardship but rather would benefit from the grant of a preliminary injunction. Plaintiff is currently providing transportation services to

Dry Tortugas National Park and is prepared to continue to do so pending resolution of this matter. Ex. 1, Eymann Decl. at ¶ 13. Therefore, there will be no disruption in transportation services as a result of an injunction, Dry Tortugas National Park will remain open, visitors will continue to come and go without interuption, and plaintiff will continue to provide the high quality services it has been providing for years. Id.

Moreover, plaintiff's protest raises a single, relatively simple question of law which is not likely to be time-consuming to resolve. Of course, defendant has an interest in seeing that all applicable laws are complied with. Defendant surely does not want to be in a situation where large costs are subsequently imposed on a successful offeror post-award due to the applicability of the SCA, which could result in diminished operating capacity or even default on the contract and resulting loss of transportation services to DTNP.

Absent this certainty, an offeror who bids the contract and includes SCA wages faces the prospect of losing the contract to a competitor who does not include SCA wages and who, therefore, has lower costs. It is axiomatic that offerors should not be placed at a competitive disadvantage by complying with federal law. Alternatively, if the offeror ignores the applicability of the SCA to the contract, the offeror may very well be compelled by NPS to comply with the SCA post-award and be required to bear the corresponding costs without a corresponding adjustment in the contract price. Should NPS take this approach, as it did with respect to the Alcatraz contract discussed supra, the DTNP contract could become less profitable and difficult, if not impossible, to perform.

**D. The Public Interest Would Be Served By Issuance Of A Preliminary Injunction**

Granting an injunction pending resolution of this matter is in the public interest. Because plaintiff is an incumbant and currently providing transportation services to DTNP, maintaining the status quo during the short period of time required to resolve this matter will allow the public to continue to access and enjoy Dry Tortugas National Park during the period of the injunction.

Conversely, the reasons for enacting the SCA would be frustrated if NPS is allowed to exempt itself from compliance with the SCA and to deny offerors' employees the protections afforded under the SCA. See Am. Fed. of Gov't Employees Local 1668, 561 F.2d at 1312 (Congress "passed the Service Contract Act to insure 'that the federal Government shall not be a party to the depressing of labor standards in any area of the nation'") (111 Cong. Rec. 24387 (1965) Cong. O'Hara, co-author of the Act).

Additionally, courts have consistently recognized "[w]idespread support . . . for the proposition that the public interest in protecting the integrity of the procurement system is well served by granting a[n] . . . injunction." Id. (citing Scanwell Labs, Inc. v. United States, 424 F.2d 859, 866-67 (D.C. Cir. 1970); PCI/RCI v. United States, 36 Fed. Cl. 761, 776 (1996)). An injunction also furthers the purpose of section 4(c) of the SCA which was the remedy the problem of contractors underbidding for government contracts by slashing wages. See Gracy v. IBEW, 868 F.2d 671, 675 (4th Cir. 1989).

**CONCLUSION**

The four factors for consideration in determining whether to grant an injunction "can effectively merge" so that "the court assesses movant's chances for success . . . and weighs the equities as they affect the parties and the public." Standard Havens Products, Inc. v. Gencor Industries Inc., 897 F.2d 511, 513 (Fed. Cir. 1990). In this case, plaintiff has demonstrated that it has at least a substantial case on the merits and the equities strongly favor granting an injunction. For the reasons discussed herein, plaintiff respectfully requests that the Court grant its request for a preliminary injunction.

Respectfully submitted,

Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

Dated: August 7, 2008

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
*Bid Protest*

| | | |
|---|---|---|
| SUNNY DAYS CATAMARANS, INC., Plaintiff, | ) | |
| v. | ) | No. ______________ |
| THE UNITED STATES OF AMERICA, Defendant. | ) | |

**[PROPOSED] ORDER**

Upon consideration of plaintiff Sunny Days Catamarans, Inc.'s Motion for a Preliminary Injunction, supporting declarations, memorandum of points and authorities in support thereof, and other papers and proceedings herein, it is hereby,

**ORDERED**, that plaintiff's Motion for a Preliminary Injunction, be and is hereby, **GRANTED**, and it is further,

**ORDERED**, that defendant United States together with the delegates, officers, agents, servants and employees of the United States National Park Service, shall be, and are hereby, **ENJOINED**, from (1) continuing with the solicitation and making award of NPS concession contract number CC-DRTO001-08, the principal purpose of which is to furnish transportation services, in response to a solicitation that does not expressly set forth the applicability of the Service Contract Act ("SCA"), 41 U.S.C. § 351 et seq., and (2) from allowing any contractor on

concession contract number CC-DRTO001-08, the principal purpose of which is to provide transportation services to pay their employees wages and fringe benefits lower than those required by the SCA.

**SO ORDERED.**

____________________________
JUDGE

Dated:______________________, 2008

# EXHIBITS

**EXHIBITS TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUCNTION**

First Declaration of Bernard E. Eymann dated August 7, 2008 .......................................Exhibit 1

Business Opportunity for Concessions Operation at Dry Tortugas
National Park ...........................................................................................Exhibit 2

United States Department of Labor, Wage and Hour Division, Opinion Letter,
(July 13, 2004) (case closed) ("Denali DOL Ruling") .......................................Exhibit 3

United States Department of Labor, Wage and Hour Division, Opinion Letter,
(January 6, 2006)(appeal pending at DOL Administrative Review Board)
("Alcatraz DOL Ruling") ...........................................................................Exhibit 4

Letter from Jonathan B. Jarvis, NPS to Terry MacRae, Alcatraz Cruise Lines,
LLC dated October 12, 1996 incorporating the SCA into the
Alcatraz contract..........................................................................................Exhibit 5

Excerpts from "Business Opportunity for Ferry Service at Statue
of Liberty National Monument and Ellis Island" ...............................................Exhibit 6