# Exhibit 5

# United States Department of the Interior

NATIONAL PARK SERVICE
Pacific West Region
[illegible] Jackson Street, Suite [illegible]
Oakland, California 94607-[illegible]

IN REPLY REFER TO:
C42 (PWR-CM)

**EXHIBIT 4**

THIRD DECLARATION OF CAROLYN A. LOWN, CIVIL NOS. 06-2107 & 06-2152 CW

October 12, 2006

EXHIBIT 2

Mr. Terry MacRae
CEO
Alcatraz Cruises, LLC
Pier 3 on the Embarcadero
San Francisco, California 94111

Re: Acknowledgment and Incorporation of Applicable Laws Concession Contract No. CC-GOGA001-06 Service Contract Act

Dear Mr. MacRae:

The U.S. Department of Labor ("DOL") has issued a coverage determination regarding the applicability of the McNamara-O'Hara Service Contract Act ("SCA"), 41 U.S.C. §351 *et seq.*, to National Park Service ("NPS") Concession Contract No. CC-GOGA001-06, the current concession contract for certain visitor services for Alcatraz Island, as well as the applicability of the SCA to the predecessor concession contract, NPS Concession Contract No. CC-8073-3-0019. The ruling on this determination was issued on September 15, 2006 and, in response to a request by NPS for clarification, subsequently was clarified in a letter sent September 26, 2006. Copies of the ruling, request by NPS for clarification, and subsequent clarification (collectively the "Coverage Determination") are attached hereto and incorporated herein as Exhibit X to this letter.

In the Coverage Determination, DOL has required NPS pursuant to 29 C.F.R. §4.5(c) to take all necessary steps to include in Concession Contract No. CC-GOGA001-06 the SCA stipulations contained in 29 C.F.R. §4.6 and all applicable wage determinations that must be attached pursuant to 29 C.F.R. §4.5 and to take these steps within thirty (30) days of receipt of the September 15, 2006 final ruling letter.

Section 5 of Concession Contract No. CC-GOGA001-06 makes the contract subject to all "Applicable Laws" and requires the Concessioner to comply with all "Applicable Laws" in fulfilling its obligations under the contract. Pursuant to that Section 5, NPS is taking the following necessary steps, solely for the purpose of complying with 29 C.F.R. §4.5(c):

1. With regard to the SCA stipulations contained in 29 C.F.R. §4.6. The stipulations required by 29 C.F.R. §4.6 are set forth in full in Exhibit Y to this letter, which is

TAKE PRIDE IN AMERICA

Ex. 5

attached hereto and incorporated herein. Once this letter is counter-signed (as set forth below), the letter will be incorporated in its entirety into Concession Contract No. CC-GOGA001-06 as Exhibit 2 and become a part of that contract.

2. With regard to any applicable wage determinations that must be attached pursuant to 29 C.F.R. §4.5 – NPS takes the following actions.

   a. Exhibit 1 to Concession Contract No. CC-GOGA001-06 has required, since the date of award, that the Concessioner comply (as part of its contractual obligations regarding compliance with all "Applicable Laws") with the preliminary injunction order issued May 1, 2006 by the U.S. District Court for the N.D. of California ("District Court") in International Organization of Masters, Mates and Pilots, Pacific Maritime Region v. National Park Service, No. C 06-2107-CW (N.D. Cal.) and in Inlandboatmen's Union of the Pacific, Marine Division, ILWU v. Mainella, No. C 06-2152-CW (N.D.Cal.) ("Preliminary Injunction") as it may be modified or otherwise changed by the courts. Exhibit 1 further has required the Concessioner, in accordance with such "Applicable Laws," to pay its employees providing services under Concession Contract No. CC-GOGA001-06 no less than the wages and fringe benefits specified in the collective bargaining agreements that covered certain service employees employed on the predecessor contract.

   Exhibit 1 includes a copy of the Preliminary Injunction. As Exhibit 1 references, but does not attach, copies of the applicable collective bargaining agreements, copies of the predecessor concessioner's collective bargaining agreements are attached hereto and incorporated herein as Exhibit Z. As stated above, once this letter is counter-signed (as set forth below), the letter will be incorporated in its entirety into Concession Contract No. CC-GOGA001-06 as Exhibit 2 and become part of that contract.

   NPS notes that pursuant to 29 C.F.R. §4.1b and Section d(2) of Exhibit Y, the wage and fringe benefit terms of the predecessor concessioner's collective bargaining agreements apply to Concession Contract No. CC-GOGA001-06 even in the absence of a minimum wage attachment to that contract unless it is determined that the collective bargaining agreements were not the result of arm's length negotiations or that after a hearing pursuant to Section 4(c) of the SCA the economic terms of the collective bargaining agreements are substantially at variance with the wages prevailing in the area.

   b. In addition to incorporating Exhibit Y into Concession Contract No. CC-GOGA001-06, NPS will seek clarification from DOL as to whether any additional information regarding wage determinations must be attached to that contract for purposes of compliance with 29 C.F.R. §4.5

   c. NPS also will file with the District Court a notice, advising the court that NPS (1) is requesting further clarification from DOL regarding compliance with 29 C.F.R. §4.5, (2) has incorporated this letter (once counter-signed) into Concession

Contract No. CC-GOGA001-06, and (3) will not take any further action with regard to incorporation into Concession Contract No. CC-GOGA001-06 of any wages and fringe benefits other than those specified in the Preliminary Injunction without first seeking the permission of the District Court. NPS will refrain from taking any further action regarding wages and fringe benefits without guidance from the District Court because the Preliminary Injunction specifically allows for a contractor or subcontractor to seek a variance from DOL but is silent with regard to any requests by NPS for formal wage determinations from DOL.

Please arrange to have this letter counter-signed on behalf of Alcatraz Cruises, LLC acknowledging and agreeing, in compliance with Applicable Laws, as of the date of latest signature to the terms and conditions set out in this letter. Once counter-signed, this letter is automatically incorporated into Concession Contract No. CC-GOGA001-06 as Exhibit 2 and becomes a part of that contract.

Please return the counter-signed letter to Anne Dubinsky, Concession Program Manager, Pacific West Region of the NPS, at the address set out in the letterhead.

Sincerely,

Jonathan B. Jarvis
Regional Director, Pacific West Region

cc: Superintendent, Golden Gate National Recreation Area

Acknowledged and agreed to by:

Terry MacRae
CEO, Alcatraz Cruises, LLC

10/13/06
Date

**Exhibit X**
(DOL Coverage Determination)

Copies of:

(1) letter dated September 15, 2006 from Administrator of U.S. Department of Labor to Director of National Park Service;

(2) letter dated September 20, 2006 from Acting Assistant Director Business Services, National Park Service to Wage and Hour Division of U.S. Department of Labor; and

(3) letter dated September 26, 2006 from Office of Enforcement Policy, Wage and Hour Division, U.S. Department of Labor to Acting Assistant Director Business Services, National Park Service

SEP-15-2006 17:52 FROM:US DOL WAGE & HOUR 202 693 1087 TO:202 208 3877 P.2/6

**U.S. Department of Labor**

Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

September 15, 2006

Fran P. Mainella, Director
National Park Service
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

Dear Ms. Mainella:

This is in response to your letter of April 7, 2006, setting forth the National Park Service's (NPS's) reasons for not incorporating the provisions of the McNamara-O'Hara Service Contract Act (SCA) (41 U.S.C. §§ 351-358) into the incumbent concession contract, No. CC-8073-3-0019, and the Solicitation for the new concession contract, No. CC-GOGA001-05. These contracts provide ferry transportation services to the Golden Gate National Recreation Area, including food and beverage services on the vessels, and shuttle access service for persons with disabilities on Alcatraz Island, California. It is NPS's position that SCA does not apply to the referenced contracts because NPS concession contracts are governed exclusively by the NPS Concessions Management Improvement Act of 1998 (1998 NPS Concessions Act), 16 U.S.C. §§ 5951-5966, and its implementing regulations, 36 C.F.R. Part 51. Further, if these concession contracts are determined to be subject to SCA, it is NPS's position that an exemption from SCA for these contracts would be in the public interest, in accord with the remedial purpose of the SCA, and necessary to avoid serious impairment of Government business.

Based on the language of the SCA, if a contract is "entered into" by or with the Government, and if its principal purpose is "to furnish services in the United States through the use of service employees," it is subject to the Act. 41 U.S.C. § 351(a). The SCA is intended to be applied to a wide variety of service contracts; the nomenclature, type, or particular form of contract used is not determinative of coverage. 29 C.F.R. § 4.111(a). To illustrate this point, the SCA regulations provide a listing of contracts that have been found to come within the coverage of the Act. 29 C.F.R. § 4.130(a). Among the types of service contracts included on this list are contracts for concession services. 29 C.F.R. § 4.130(a)(11). The SCA authorizes the Secretary of Labor under "special circumstances" to allow reasonable exemptions from the Act that are consistent with its purpose, 41 U.S.C. § 353(b), and the Secretary has issued an exemption for certain kinds of

09/18/2006 MON 05:50 [TX/RX NO 9838] 003

concession contracts as provided in 29 C.F.R. § 4.133(b). Exempt concession contracts are those "principally for the furnishing of food, lodging, automobile fuel, souvenirs, newspaper stands, and recreational equipment to the general public as distinguished from the United States Government and its personnel." However, 29 C.F.R. § 4.133(b) also provides that "[w]here concession contracts . . . include substantial requirements for services other than those stated, those services are not exempt" and, accordingly, if a contract exceeds $2,500, it would be required by the Act to include the stipulations and wage determination that sets forth the minimum wages and fringe benefits to be paid to service employees performing on the contract. 41 U.S.C. § 351(a). *See also* 29 C.F.R. § 4.141(a) ("concession contracts are considered to be contracts in excess of $2,500 if the contractor's gross receipts under the contract may exceed $2,500"). Thus, if the principal purpose of the concession contracts in question is to provide services through the use of service employees, then the contract is covered by SCA, unless the services performed under these concession contracts are among those identified as exempt in 29 C.F.R. § 4.133(b).

It is NPS's position that "all" NPS concession contracts are generally not subject to coverage under SCA as they are exclusively governed by the 1998 NPS Concessions Act and its implementing regulations. Further, NPS maintains that "[t]he operations provided by NPS concessioners are not for the benefit of the government, but are a benefit for the visiting public." In support of this position, NPS cites the legislative history of the 1998 NPS Concessions Act and a brief filed by the Solicitor General in *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803 (2003). We do not find these materials to be persuasive.

The plain language of SCA dictates that it applies to "every contract" the principal purpose of which is to furnish services in the United States through the use of service employees. 41 U.S.C. § 351(a). The Act does not contain any provision that limits coverage to those contracts in which the Government procures the services for itself or is the beneficiary of such services. Department of Labor (DOL) regulations also are clear that SCA coverage of service contracts does not depend on the government receiving direct benefit from the services provided. At 29 C.F.R. § 4.133(a), the regulations provide as follows:

> [T]here is no limitation in the Act regarding to the beneficiary of the services, nor is there any indication that only contracts for services of direct benefit to the Government, as distinguished from the general public, are subject to the Act. Therefore, where the principal purpose of the Government contract is to provide services through the use of service employees, the contract is covered by the Act *regardless of the direct beneficiary of the services* or the source of the funds from which the contractor is paid for the service, and

> irrespective of whether the contractor performs the work in its own establishment, on a Government installation, or elsewhere.

*Id.* (emphasis added). In promulgating this final rule, DOL specifically rejected the contention that the Act should not be applied to "contracts which primarily benefit the public," by stating that "[t]he language of the Act makes no distinction based on the beneficiary of the contract services, and further, the Act's legislative history provides no evidence of a Congressional intent to so limit coverage." *See* Preamble to the SCA Final Rule, 48 Fed. Reg. 49,753 (Oct. 27, 1983). The preamble referenced the district court decision in *District Lodge No. 166, IAMAW v. TWA Services, Inc.*, 25 Wage & Hour Cas. (BNA) 208 (M.D. Fla. 1981), in which the court stated that "the SCA does not explicitly, or implicitly, exclude concession contracts from its coverage." *Id.* at 210. Thus, even though NPS claims the concession contracts may not be generally viewed as "contracts for the procurement of goods and services for the benefit of the government," this position does not serve to defeat SCA coverage.

The Solicitor General's brief in *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803 (2003), which you have cited, also does not support NPS's position. Although it is true that the Solicitor General argued in that brief that most NPS concession contracts are not "procurement" contracts, that distinction is not relevant to the question whether a contract falls within the scope of the SCA. On the other hand, the Solicitor General repeatedly characterized NPS concession contracts throughout the brief as contracts for the provision of services to the general public. *See* Br. at 40 (concession contracts have the "main purpose of providing *service* to visitors") (emphasis added); *id.* at 54 (citing legislative history stating that "contracts made with these operators in the national parks are made . . . for *service* to be furnished to the public who go to the parks") (emphasis added). As we have explained, contracts for the provision of services to the general public fall within the scope of the SCA.

Similarly, the 1998 NPS Concessions Act does not contain any language exempting NPS concession contracts from coverage under SCA. The Senate and House committee reports on the 1998 NPS Concessions Act provide that concession contracts "do not constitute *contracts for the procurement of goods and services* for the benefit of the government or otherwise." S. Rep. No. 202, 105th Cong., 2d Sess. 39 (1998); H.R. Rep. No. 767, 105th Cong., 2d Sess. 43 (1998) (emphasis added). This language, however, says nothing about whether NPS concession contracts should be considered "contracts for the furnishing of services" within the meaning of SCA.

Thus, contrary to NPS's position and its interpretation of 29 C.F.R. § 4.133(b), DOL can find no language that expressly excludes all NPS concession contracts

providing services to the public from SCA coverage. Rather, DOL's express intention in promulgating 29 C.F.R. § 4.133(b) was "to exempt certain types of concession contracts pursuant to the Secretary's authority under section 4(b) of the Act." 48 Fed. Reg. at 49,753. Clearly, 29 C.F.R. § 4.133(b) sets forth the types of concession contracts let by federal agencies that may qualify for the exemption.

Because the concession contracts in question principally provide ferry transportation services to and from Alcatraz Island, they are covered by SCA and are not within any of the categories of concession contracts that are specifically exempted under 29 C.F.R. § 4.133(b). Moreover, when a concession contract is principally for services covered by the SCA, the remaining services are deemed incidental to the overall purpose of the contract and thus are also subject to the requirements of the SCA. Our understanding of the concession contracts in question is that the food and beverage services provided on the vessels are incidental to the transportation services provided visitors and NPS staff that are not exempt under 29 C.F.R. § 4.133(b). Although the food and beverage concession services provided might be exempt pursuant to 29 C.F.R. § 4.133(b) if awarded under a separate contract, they are covered by the SCA in this case because they are incidental to the overall purpose of the contracts in question, which is to furnish transportation services to and from Alcatraz Island, services that are clearly covered by the SCA.

The Secretary of Labor's authority under 41 U.S.C. § 353(b) and 29 C.F.R. § 4.123 to provide variances, tolerances, or exemptions under the SCA is limited to "special circumstances where [she] determines that such . . . exemption is necessary and proper in the public interest or to avoid serious impairment of Government business, and is in accord with the remedial purposes of this Act to protect prevailing labor standards." Thus, to grant a blanket exemption for all NPS concession contracts requires a strong and affirmative showing that such exemption is necessary and proper in the public interest or to avoid serious impairment of Government business, while giving due regard to the remedial purposes of the Act to protect prevailing labor standards. Upon consideration of the information submitted, we decline to grant such an exemption.

Inasmuch as the concession contracts in question are principally for ferry transportation services, these contracts are subject to SCA coverage. Therefore, pursuant to 29 C.F.R. § 4.5(c)(2), please take all necessary steps to incorporate the SCA stipulations and the applicable wage determination(s) into the current concession contract (CC-8073-3-0019) within thirty (30) days of receipt of this letter and apply these stipulations and applicable wage determination(s) prospectively from such date. In addition, please ensure that the SCA stipulations and applicable wage determination(s) are incorporated in

Solicitation No. CC-GOGA001-05. Please inform us of your actions in this matter as soon as possible.

This letter constitutes a final ruling in this matter. Under 29 C.F.R. § 8.7, any aggrieved party may file a petition for review of this final determination with the Department of Labor's Administrative Review Board within sixty (60) days. Any appeal should be addressed to the Administrative Review Board, U.S. Department of Labor, 200 Constitution Avenue, N.W., Room S-4309, Washington, D.C. 20210.

Sincerely,

Paul DeCamp

Paul DeCamp
Administrator

cc: Mr. James Spinosa
Mr. Robert Remar
Mr. Charles S. Birenbaum
Mr. Robert Spagat
Ms. Eleanor Morton
Mr. Dmitri Iglitzin

# United States Department of the Interior

NATIONAL PARK SERVICE
1849 C Street, N.W.
Washington, D.C. 20240

Office of the Director

SEP 20 2006

(2410)

COPY

Mr. Paul DeCamp
U.S. Department of Labor
Wage and Hour Division
200 Constitution Avenue NW
Washington, DC 20210

Dear Mr. DeCamp:

In response to your letter of September 15, 2006, regarding the application of the McNamara-O'Hara Service Contract Act ("SCA") to the National Park Service concession contract for service to Alcatraz Island within the Golden Gate National Recreation Area, I would like to provide you with additional information relevant to that letter and to advise you of our intentions in this matter.

In your letter you have requested that the SCA stipulations and applicable wage determination(s) be incorporated in Solicitation No. CC-GOGA001-05 and in concession contract No. CC-8073-3-0019 within thirty (30) days of your letter and applied prospectively from the date of incorporation. However, Solicitation No. CC-GOGA001-05 has closed. On May 9, 2006, a new concession contract was awarded for this service and is identified as CC-GOGA001-06 ("Concession Contract"), as it was awarded in 2006 rather than in 2005. Performance by the new concessioner under the Concession Contract was phased to ensure an orderly transition and began on May 9, 2006, with respect to all elements of the contract except actual ferry service. Actual ferry service by the new concessioner will commence on September 25, 2006. Concession contract No. CC-8073-3-0019, the predecessor concession contract, will expire by its terms on September 24, 2006, thus completing the transition between concessioners.

In light of the fact that concession contract No. CC-9073-3-0019 will expire within seven (7) days of your letter, and your letter requests incorporation within thirty (30) days for prospective application, we believe such incorporation is not required. With respect to the new Concession Contract, we understand your ruling to apply prospectively to the awarded Concession Contract itself, rather than to the closed solicitation.

We note that the awarded Concession Contract currently requires the payment of wages and fringe benefits specified in the collective bargaining agreements between the predecessor concessioner and two unions representing that concessioner's employees, as it incorporates (through its compliance with "Applicable Laws" provision) a preliminary injunction order issued May 1, 2006 by the U.S. District Court for the Northern District of California ("District Court").[1]

09/21/2006 THU 07:55 [TX/RX NO 8726] 002