**UNITED STATES COURT OF FEDERAL CLAIMS**
Pre-Award Bid Protest

| | | |
|---|---|---|
| SUNNY DAYS CATAMARANS, INC., Plaintiff, | ) | |
| v. | ) | No. 08-565C<br>Judge Christine O.C. Miller |
| THE UNITED STATES OF AMERICA, Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY BRIEFING**

**Statement Of Facts**

On April 25, 2008, the National Park Service ("NPS") issued a notice of the availability of a prospectus for a concessions contract for "round trip passenger ferry service between Key West, Florida, and Dry Tortugas National Park and other specified services." The solicitation was identified as CC-DRTO001-08 ("Solicitation"). Complaint at ¶ 8. After learning that the solicitation was subject to the Service Contract Act ("SCA"), 41 U.S.C. § 351 et seq., but did not contain provisions specified by the SCA, plaintiff submitted the following question to NPS on June 4, 2008, and more than seven weeks later, on July 29, 2008, received the following response:

**Question:**

Since the Services Contract Act (SCA) normally would apply to contracts such as this one, has the NPS received a DoL exemption from the Services Contract Act for this competition?

**NPS Response:**

> The NPS believes the Services Contract Act does not apply in the circumstances presented by this concession opportunity. However, if it is determined that this Contract is subject to the Service Contract Act, then pursuant to the provisions of Section 5 of this Contract, which requires compliance with all Applicable Laws, the appropriate provisions of the Service Contract Act will be incorporated into this Contract. . . .

See First Declaration of Bernard E. Eymann submitted in support of Plaintiff's Motion for Preliminary Injunction at ¶ 10.

On August 7, 2008, plaintiff filed a Complaint challenging NPS's failure to specify in the Solicitation that the successful offeror must comply with the SCA and to incorporate all of the provisions of the SCA into the Solicitation. Complaint at ¶ 6. To remedy this violation of law, plaintiff requested both declaratory and injunctive relief. Id. at 7 ("Whereas" clause). Of course, this Court has jurisdiction to decide pre-award bid protest actions (see 28 U.S.C § 1491(b)(1)) and in doing so may "award any relief that the court considers proper, including declaratory and injunctive relief. . . ." 28 U.S.C. § 1491(b)(1)(2) (emphasis added).

On the same day that it filed its Complaint, as recommended by Appendix C, Rule 10 of the Rules of the Court of Federal Claims, plaintiff also filed a motion to preliminarily enjoin defendant from (1) proceeding with the solicitation and making award of NPS concession contract number CC-DRTO001-08, . . . in response to a solicitation that does not provide for the applicability of the SCA, and (2) allowing any contractor on concession contract number CC-DRTO001-08 to pay their employees wages and fringe benefits that are lower than those required by the SCA. Plaintiff's Motion for Preliminary Injunction at 1.

At the initial status conference in this matter, counsel for defendant sought and obtained an expedited briefing schedule for plaintiff's preliminary injunction motion.[1] Defendant also requested that plaintiff enter into a protective order before defendant would tender the Administrative Record – a request to which plaintiff acceded. Subsequently, defendant sought additional time to file the Administrative Record – a request to which plaintiff again acceded. On August 21, 2008, the day before its response brief and Administrative Record were due, defendant filed its motion to stay all scheduled briefings and filings because:

> Although NPS believes that the solicitation as published is lawful, NPS believes that it is in the best interest of the Government to incorporate the provisions of the SCA into the solicitation and the contract contained within it.

Defendant's Motion to Stay Briefing at 1 (emphasis added). Defendant further states that staying this litigation would give "NPS the opportunity to resolve this matter without further briefing and trial, [which] will conserve the parties' and this Court's resources . . ." Defendant's Motion to Stay Briefing at 2. However, as demonstrated below, the surest way to avoid wasting the resources of this Court and prevent the need for any future duplication of effort and expense by the parties, this Court, other tribunals and taxpayers is to resolve the instant case.

[1]Following the status conference, the Court entered an Order directing defendant to take no further action with respect to the Solicitation. Docket No. 9. Defendant subsequently obtained clarification from the Court that it could and should inform prospective offerors that the date by which offers were to be submitted, August 13, 2008, was no longer applicable. It later became known to plaintiff that defendant had, however, not advised potential offerors that the date for receipt of proposals was no longer valid and that defendant had, in fact, accepted and retained proposals submitted on or before that date. On August 20, 2008 plaintiff filed a motion seeking to enforce the Court's Orders and requiring defendant to return, unopened, all proposals that it had accepted in response to the Solicitation. Docket No. 19. Although counsel for defendant has indicated that NPS had agreed to return the proposals and provide evidence that it had done so, no such proof has been forthcoming. Accordingly, plaintiff continues to seek a ruling on its Motion to Enforce the Court's Orders.

**Argument**

It may be that the defendant's decision to issue an amendment incorporating the SCA into the Solicitation would resolve plaintiff's request for an injunction.[2] However, it is well-established that "[v]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953).[3] The Court in W.T. Grant explained that because a defendant is "free to return to his old ways" a "controversy remains to be settled in such circumstances." Id. at 632. Accordingly, where defendant voluntarily ceases to engage in the challenged conduct, the case becomes moot only if defendant meets the "heavy burden" of demonstrating that "there is no reasonable expectation that the wrong will be repeated." Id. (citations omitted).

As noted above, in addition to injunctive relief, plaintiff also seeks relief in the form of a declaratory judgment specifically holding that the SCA applies to the Solicitation. Indeed, defendant's belated and grudging proposed inclusion of SCA provisions in an amended solicitation in no way resolves this controversy because defendant remains on the record as stating that it "believes the solicitation is lawful." Defendant's Motion to Stay Briefing at 1. In light of this unequivocal statement by defendant, there is a live issue between the parties as to whether the SCA applies to the Solicitation.

---

[2]Plaintiff remains agnostic as to whether NPS's amended solicitation will properly incorporate the SCA into the Solicitation and, therefore, plaintiff will simply wait to see what the amended solicitation provides for in this regard.

[3]The Court of Federal Claims has recognized the direct applicability of the holding in W.T. Grant to bid protest cases. Lion Raisins, Inc. v. United States, 69 Fed. Cl. 32, 34 (2005) (C.J. Damich).

The resolution of this issue is of considerable and direct interest to plaintiff. That is, absent a declaratory judgment in this matter, there is nothing preventing NPS from simply issuing a second amendment that removes the SCA from the Solicitation, an action that would be in full conformity with defendant's stated views. Moreover, were plaintiff to submit the winning proposal in response to the amended solicitation, plaintiff would almost certainly face the SCA issue when offers were sought on the subsequent contract at which time plaintiff would once again be required to incur the time, expense and aggravation of litigating with the federal government as to the applicability of the SCA.

Moreover, even if plaintiff were not awarded the Dry Tortugas contract, it is a virtual certainty that plaintiff will bid on other NPS concessions contracts for ferry services, where the same issue will arise. As such, plaintiff will be prejudiced because it could not rely on a judgment in this matter establishing the basic legal principal that the SCA applies to concessions contracts for ferry and other services.

The situation might be different if this were the first time that the issue had arisen and/or defendant had made a definitive policy statement in this case that the SCA would be included in concessions contracts for ferry services as required by law. However, as this Court is well aware, defendant has aggressively sought to avoid definitive rulings on this issue in several tribunals. For example, as set out in detail in plaintiff's Motion for Preliminary Injunction, in Blue & Gold Fleet, LP v. United States *et al.*, 70 Fed. Cl. 487 (Fed. Cl. March 22, 2006) (affirmed on appeal, Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308 (Fed. Cir. June 26,

2007)), defendant successfully avoided a ruling on the merits by arguing that the issue of whether the SCA applied to a concessions contract for ferry service to Alcatraz Island was untimely if raised for the first time in a post-award bid protest.

Similarly, in Int'l Org. of Masters, Mates and Pilots, Pacific Maritime Region v. National Park Service *et. al.*, 2006 WL 1466829 (N.D. Cal. May 26, 2006), the union representing employees of the incumbent contractor on the Alcatraz contract obtained injunctive relief when the district court found that plaintiffs were likely to succeed on the merits of their claim that the SCA applied to the contract.[4] However, because NPS subsequently reversed course and required the successful offeror for the Alcatraz contract to comply with the SCA, no final judgment was ever entered in that case.[5]

Finally, the Department of Labor ("DOL") has determined that that none of the few limited exceptions for application of the SCA to concession contracts found in 29 C.F.R. § 4.133(b) were applicable to the Alcatraz concessions contract and, therefore, the SCA applied to the contract despite NPS's contention to the contrary.[6] Nevertheless, NPS has filed an

---

[4]See Letter from Jonathan B. Jarvis, NPS, to Terry MacRae, Alcatraz Cruise Lines, LLC, dated October 12, 1996 incorporating the SCA into the Alcatraz contract. A copy of the letter is attached to plaintiff's Motion for Preliminary Injunction as Ex. 5.

[5] Significantly, NPS simply imposed the terms of the SCA on the successful contractor post-award through Section 5 of the Alcatraz contract which requires the contractor to comply with all applicable laws in fulfilling its obligations under the contract. Id.

[6]See United States Department of Labor, Wage and Hour Division, Opinion Letter, (January 6, 2006), copy of the Alcatraz DOL Ruling is attached to plaintiff's Motion for Preliminary Injunction as Ex. 4.

administrative appeal of that ruling, which has been pending with the DOL Administrative Review Board since November, 2006.[7]

NPS has sought not only to avoid definitive rulings on the point, it has stated repeatedly on the record in this case that it does not believe that the SCA applies to the Solicitation. As noted above, it is well-established that voluntary cessation of allegedly illegal conduct does not make the case moot or deprive the court of authority to hear and determine the case. See WT Grant, supra at 632. This is particularly true where a party voluntary ceases its allegedly illegal conduct while maintaining that it is in the right. Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 43 (1944) ("Respondent has consistently urged the validity of the split-day plan and would presumably be free to resume the use of this illegal plan were not some effective restraint made. There is thus 'an actual controversy, and adverse interest,' with a subject-matter on which the judgment of the court can operate" (internal citations omitted)). See also Virginia ex rel. Coleman v. Califano, 631 F.2d 324, 324-26(4th Cir. 1980) (Although federal agency had granted administrative hearing demanded by State of Virginia, complaint seeking declaration that Virginia had right to hearing was not moot where federal agency continued to assert that hearing was not required); Hall v. Board of School Commrs., 656 F.2d 999, 1001 (5th Cir. 1981) (Public school's cessation of Bible study course due to "scheduling problems" did not resolve case where school continued to maintain that course was constitutional). Indeed, even where

[7] These are only the instances of which plaintiff is aware. There may well be other such cases in tribunals across the country that have not resulted in reported decisions or have escaped plaintiff's attention. Moreover, plaintiff has located another concession contract in which NPS has included the SCA in a contract for ferry services to the Statue of Liberty. See Motion for Preliminary Injunction at 8. It is not known what caused NPS to include the SCA in this concessions contract.

cessation of allegedly illegal contact, coupled with a representation of an intention not to engage in allegedly illegal conduct moots the need for injunctive relieve, it does not require a denial of declaratory relief. Quern v. Mandley, 436 U.S. 725, 733 n.7 (1978). Here, of course, NPS has not made any such representation that it will not return to its allegedly illegal conduct in this or future solicitations to which plaintiff may respond. To the contrary, NPS continues to assert the validity of its position. Thus, a declaratory judgment in this matter will have the salutary effect of resolving the application of the SCA to the instant solicitation; making use of the time, effort and treasure already expended by the parties, the Court and the taxpayers in the instant case; as well as reducing or preventing entirely the need for duplication of time, effort and expense by future parties, tribunals and the taxpayers in subsequent litigation involving this same basic issue of law.

**Conclusion**

In sum, because defendant has stated that it does not believe that its action of incorporating the SCA into the Solicitation is required by law, there is simply no way that defendant can meet its "heavy burden" of demonstrating that "there is no reasonable expectation that the wrong will be repeated." W.T. Grant, 345 U.S. at 632. To the contrary, past experience and statements of record in this case demonstrate that NPS has no intention of applying the SCA in concessions contracts as required by law unless and until legal proceedings are brought against it.

In an effort to avoid wasting the time and expense already incurred by the parties and the Court, to continue the efficient resolution of this single, relatively simple legal issue, and mindful

of the fact that this suit might have been avoided entirely if defendant had incorporated the SCA into the Solicitation months ago as plaintiff had suggested, plaintiff respectfully requests that the Court enter an order:

1. Staying the briefing on plaintiff's pending Motion for Preliminary Injunction;

2. Requiring defendant to file the Administrative Record in this matter as quickly as possible;

3. Permitting plaintiff to file a Motion for Declaratory Judgment within 14 days after the filing of the Administrative Record;[8]

4. Allowing defendant such reasonable time thereafter as it requires to respond to plaintiff's Motion for Declaratory Judgment;

5. Allowing plaintiff such reasonable time thereafter as it requires to file a reply brief;

6. Precluding defendant from taking any further action with respect to proceeding toward award under the Solicitation including the issuance of any amendments thereto until such time as this Court resolves the merit of the plaintiff's Motion for a Declaratory Judgment; and[9]

7. Requiring defendant to respond to plaintiff's Motion to Enforce the Court's Orders on or before August 28, 2008.

---

[8]Plaintiff notes its intent to file a Motion for Declaratory Judgment in substantially the same form as its pending Motion for Preliminary Injunction, although the standard of review will be different.

[9]Although plaintiff remains confident that it will prevail in its Motion for Declaratory Judgment, it would seem prudent not to proceed with the amended solicitation on the chance (remote as it might be) that defendant will prevail on the SCA. In this way, potential offerors will have certainty as to the lawfulness of the solicitation before they spend additional, significant time and money trying to respond.

Respectfully submitted,

s/Richard W. Goeken
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

Of Counsel:

Marisol Rojo
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: August 26, 2008

F:\SUNNY DAYS CATAMARANS\Dry Totugas National Park\Response to Def's Motion to Stay Briefing (Final).doc